Madam Clerk, will you please call the next case? 14-2438 Allard Property & Casualty Insurance Company v. Craig & Skolnick, Ed Hall. All right, I'd like for the attorneys to step up to the podium. I'd like for you to tell me your name, who you represent, and approximately how long your argument will take. Good morning, Counsel. Good morning, Your Honor. Ed Sedlacek, S-E-D-L-A-C-E-K. I represent the appellant, Joshua Skolnick. I anticipate my argument will take approximately 15 minutes. Okay. Good morning, Counsel. Good morning, Your Honor. Joseph Postal. I represent the plaintiff appellee, Allard Property & Casualty Company. And I'd imagine 15 minutes would do the trick for me as well. Okay, very good. You can have a seat. Counsel, you can proceed with your argument. May it please the Court, an unfortunate event occurred at the Skolnick residence. Haley Johnson died there a few years ago in the home where Joshua Skolnick resided with his parents. We are here to talk about whether the Skolnick's insurer, Allied, has a duty to defend the Skolnicks in the wrongful death action that followed Haley's death. There are two policies at issue. They both have the same clause that we're going to talk about, the illicit substance exclusion, which excludes coverage where an injury arises out of the use, sale, manufacture, delivery, transfer, or possession of a controlled substance. If it's by a physician. That's the exclusion. There is an exception at the end of the exclusion for prescription drugs issued by a licensed physician and following their orders. And that's actually what I'd like to talk about first. If I'm a consumer and I take out a homeowner's policy or an umbrella policy and I read the illicit substance exclusion and say, well, I'm not a drug dealer. I don't deal in illicit substances. This doesn't apply to me. Now, I do have prescription medications, but there's an exception for that, so I'm covered. I don't need to worry about my prescription medications. And I think that's the reasonable interpretation of that clause. Joshua Skolnik, he was prescribed methadone. It was dispensed to him in multiple doses, I think seven at a time. In order to take the drug, methadone, he had to take it home and store it there. One of the theories alleged in the underlying complaint is that one way or the other, Haley Johnson found this methadone and took it without Joshua's involvement. He had it stored there. She found it. She took it. Now, the trial court determined that the prescription exception did not apply because it took the term. It used to only mean Joshua's ingestion, and I think that's wrong. I thought it was that he gave it to her, Joshua gave it to her, and then he also spiked her with robinol and what was the other drug, GMV? No one knows how she took the methadone. There's multiple allegations, theories of allegations. There's he gave it to her. There's negligent storage. She found it. She took it. Those are the two main theories. We don't know if he gave it to her or if she found it and took it. And the complaint provides for both of those theories. Does it really make a difference? Was she one of the insured? I'm sorry? Your Honor? Does it really make a difference? Was she an insured under the policy? I don't believe she is an insured. He is a guest. Joshua is an insured, and it's his liability we're talking about today. Okay. You're right. But it's very clear from my reading that she was in the house. Somehow she came into contact with this methadone, and that was the cause of her death, correct? I think that's an open question. I don't think we can say that yet. Looking at the complaints as a whole, I don't think we can say that yet. There's many factors at play. Yes, there's methadone in her system. There's alcohol in her system. She's a prior drug abuser. And I don't think, with all those factors in play, you can say that her death was caused by the methadone. We don't know how much she drank. We don't know how much methadone she even took. We don't even know the manner of her death. And I think the most compelling illustration of how this … Methadone intoxication, according to the briefs. The medical examiner did that report that cited in the complaint did say that. But we can't look at that in a vacuum where there's all these things. I mean, I think a good way to illustrate, a good way to look at this case, is the former Felt case out of New Jersey, which was similar facts, similar background, the same exclusion. And that court used basically the same definition for arising out of. And they found that there had to be coverage, and unless and until these non-excluded reasons could be determined to not be applicable. Well, don't you have the other claim in the complaint that Joshua was negligent in not getting her help when he knew she was under distress? Yes, Judge. That was also present in the former Felt case. Whether Joshua knew she took it or not, he may have given it to her, he may not. The complaint, again, provides for both. Whether he knew she took it or not, that next morning she was in bad shape, and he did not act appropriately, or it's alleged that he acted negligently under the circumstances and didn't act reasonably. And I believe that's another independent basis for liability that is attenuated from the drug ingestion. He had that responsibility, whether he knew she took the methadone or not. So with that claim, under Illinois law, the insurance company has a duty to defend. I believe so, Judge. You believe so, or is that your position? That's my position, yes. And that's because there is another basis. There's a basis other than the drug in the complaint. There's another totally unrelated count. What is that independent basis? Failure to summon aid. So she came home with him at night. The next morning it's alleged that Joshua and his mother observed her gurgling and didn't do anything. They refused people to see her. And then I think it's alleged sometime later she died. And by the time Joshua actually summoned aid, it was too late. Which was what, six to ten hours late? Something like that. But you're contending her injuries were independent from the use of any drugs. That's your position? Right. I mean, I think the complaint alleges that had he summoned aid, she may not have died. And so there's an injury that was suffered independently as a result of his failure to summon aid. So then the question is, is that claim separate from or have an independent basis from the other claims? Their position is these are all a rise out of the same ax. That is the drug. Right? That is their claim. Okay. And so why do you say that that's not something we should follow? Because it's sufficiently attenuated from the ingestion. Why is it attenuated? Because he may not have even known that she had taken it and should have done something when he saw her. And yet what case are you relaying then in Illinois that it's attenuated? Well, there's not a lot of cases that interpret this particular exclusion, but I believe there is the USF&G case which talks about when there's not a clear-cut distinction between the excluded cause and the injury, that sometimes you do have to get into causal examination. Even though you're evaluating a contract, you do have to get into causal examination where there are multiple concurrent causes that are alleged. And I think USF&G, which is not applicable in every case, but I do believe it is applicable where there are multiple concurrent causes. And again, I go back. It's out of the former public case. The New Jersey Supreme Court evaluated and looked at where you have multiple concurrent causes. You have to wait and see how that plays out. Otherwise, you run the risk of going ahead and excluding coverage on a cause that ultimately may not end up being the predominant cause. And getting back to… Do you think the plaintiff uses a Brecht IV analysis for Brecht McLean? I think that they do. They cite a bunch of cases that talk about the coverage portions. But I think if you read Oakley Transport and other cases, it's clear that you need to take a more narrow approach when evaluating exclusion. Do you have any case that supports looking at the exclusion rather than the coverage? Well, I think that happened in the Smiley case, which is not a case that I think is applicable here because I think that dealt with the home business exclusion. Now, I think that's a totally different exclusion that you have to look at differently because whether someone's operating a home business I think is more black and white than when someone's out drinking and has all this other stuff going on. There's more at play here. But I think they talked about using the dictionary version of arising from and came to kind of the same conclusion as Romerfeld's. Where did it spring up and originate from? And that has a causal element to it. And you have to look at if you can single out the causal elements, and I don't think you can do that here. But arising out of is, in the use of that term, is extremely plastic in a way. It can fit almost any amount of space to say what could be involved in arising out of. And then you get to when you finally get to cause and effect. All right, and I think if you can't figure it out and you're required to analyze things to the benefit of the insured, I think you're supposed to look at the narrower sense for the benefit of the insured. And so you apply the narrowest interpretation you can. And if you can't answer that question, what did spring up, originate out of, and you can't rule out all the other causes, then I think there has to be a duty to defend. Because the duty to defend is brought. Correct. Anything further? Not unless your honors have any further questions.  Thank you, your honors. Thank you. So there's only one Illinois case that construes the controlled substances exclusion, and that's Westfield v. Long. We relied on that heavily in our brief. I couldn't help but notice that Skolnik's reply brief doesn't even mention Westfield v. Long. I think apparently they'd like the court to forget about it. But it's the only case addressing this exclusion. It's a case that applies the arising out of standard to the exclusion. The court specifically rejected the contention that arising out of in an exclusion is ambiguous. And instead of confronting Westfield v. Long and explaining why that case shouldn't control this one, they talk about this Flommerfeld case from New Jersey. That case is not consistent with Illinois law because the court in Flommerfeld found that the exclusion was ambiguous. Our appellate court found it's not ambiguous. Another reason that it's distinguishable is that rather than confining its consideration to the allegations and the complaint, the Flommerfeld court engaged in an extensive discussion of the evidence in the case, which was provided, I don't know, I guess through depositions. The underlying case, I believe, was not even resolved, and made a factual determination from the evidence about whether the exclusion applied or whether there was a question of fact about whether it applied. Well, that's not proper under Illinois law, as you know. The court is generally confined to considering the allegations in the complaint and comparing them to the policy for the purposes of determining. I don't know if you're at least in the complaint allegations of two separate independent approximate causes for the death, one being the ingestion of the drug, and the other is that the delay of a joshua in getting help. Those are totally separate bases. They're not because she wouldn't have needed medical assistance if she hadn't ingested all this methadone. That's why she needed the medical assistance. No, but she might have lived. The fact is, even if she ingested it, if he hadn't, it's an independent basis because it has to do with her death. And if he hadn't gotten help, she might have lived. We don't know how much she ingested. She had alcohol, she may have had something to put in her drink. A lot of others, we don't know what other drugs she might have been on. A lot we don't know. But the allegation is that he could have saved her if he doesn't, but he decided to do nothing. And what's left of there, even though she was gurgling and obviously in distress, that has nothing to do with the fact that she may have died of the drugs. Well, I think, frankly, to accept that proposition, you would have to engage in an analysis of superseding cause. In other words, are you ‑‑ I think, frankly, you would have to get into the question of whether the failure to summon medical assistance was a superseding cause or an independent cause. But why do we have to do that? Right now we're just saying that you have to defend, you have a duty to defend. That's the only question before the judge. So if there's one cause of action that is outside the confines of the policy, exclusion, then you have that duty. And it seems to me an argument can be made under USF&G that we have that kind of situation here. Okay, let me respond in two ways. First of all, Westfield v. Long applied the arising out of test and defined, and it was defined in other cases before Westfield v. Long, but they defined arising out of as springing up from or originating in, among other things. So if you apply that test here, there's no question that this poor girl's death sprung up from and originated in methadone, all right? There may have been other causes, but this is arising out of here, okay? USF&G relied on the sole approximate cause test. That is not the law. USF&G has been ‑‑ there have been a couple of decisions like Allstate v. Pruitt that have attempted to harmonize USF&G with other cases, but frankly USF&G unambiguously says the excluded instrumentality has to be the sole approximate cause for the exclusion to apply. That's just not the law. A number of appellate court cases since then have said that is, have criticized USF&G. They've said that the sole approximate cause test is not the test for determining whether an exclusion applies. I've cited those in my brief. Smiley, Allstate v. Smiley from the 2nd District in 1996. Oakley Transport from the 1st District in 1995. They criticized USF&G by name. And I might add the Supreme Court decided a case in 2001 that I cited in my brief for property and casualty v. transportation agreement that adopts a standard that's inconsistent with USF&G and I consent essentially overrules it without naming the case. I'm just going to read the operative passage from the Supreme Court's decision. That was a case, you may remember, where all those children up in McHenry County were killed in a school bus when a Metro train collided with the school bus. And so their survivor sued the bus company and the school district joint transportation agreement. They sought coverage under a commercial general liability policy, which had an auto exclusion. And so the issue is, was there some cause of action or theory of recovery asserted in the compliant that was outside the auto exclusion? And the court said... In what page? Pardon? In what page? So this is 194 Illinois 2nd at 98, bottom of 98, top of 99. The policy excludes injuries arising from the school district's use or operation of a motor vehicle. Allegations that the school district's inadequately planned and inspected bus routes were failed to warn bus drivers of potential hazards along the routes are nothing more than rephrasings of the fact that the student's injuries arose from the school district's use or operations of a motor vehicle. Contrary to the appellate court's holding, the student's complaints failed to allege that the injuries arose from events wholly independent of any negligent operation of the bus. So if you read the complaint in this case, it's very clear that it alleges that Haley died from methadone. It doesn't matter if it was given to her by Joshua or if she found it herself because it was negligently stored and inadequately secured. She was already on that drug before? I'm sorry? She was already on that drug before? No, she was not. He was. Joshua was. But she wasn't on it. But the issue is the other gun, the one with regard to the fact that he could have done something when she was in distress. Negligence. But that doesn't break the connection between the methadone and the death. It does because he could have saved her. That's independent of the fact, you know, in the case you just cited, they said there was not an independent. Here, this is a different complaint, different situation. She may have been taking that drug and we know she died of that drug. But independent of that was the fact that he could have saved her. We don't know if he could have, but one of the allegations of the complaint is that he didn't do anything. And without that allegation, I would agree with you. But even assuming that that's true, that he could have saved her life by summoning medical assistance, it doesn't change the fact that her death arose out, that it sprung out from and originated in methadone. In other words, the failure to summon medical assistance in and of itself caused her no damage, unless she was in need of medical assistance because of methadone. So you can't divorce her death from the methadone. Well, and that's because she used methadone? Is that what you're arguing? Well, that's what the complaint says, unmistakably, that she died from methadone. Well, she may have died from it, but you're saying it's excluded under the policy because she used it. Is that right? It's either excluded because she used it or because it was transferred or delivered to her. So the exclusion applies to transfer, delivery, or use of a controlled substance by any person, by any person. So either way, if Skolnick gave it to her, then he transferred or delivered it to her. If he didn't give it to her, she rather found it because it wasn't stored properly, while she used it and she's any person. So either way, and the complaint alleges both hypotheses, either way the exclusion applies. Okay, but again, I'm not so concerned about those two counts. But in terms of proximate cause, there were other drugs that she adjusted as well. Well, again, proximate cause is not the standard because this isn't the tort case. And that's what the Oakley case says and that's what the Smiley case says, is it's not appropriate in determining the duty to defend to incorporate these tort principles like proximate cause into the analysis. Rather, the language of the insurance policy controls, and that's arising out of, does it spring from or originate in the excluded instrumentality? If it does, it's excluded. And that's what we have here. The poor girl died from methadone. Methadone is a controlled substance, and so there's no duty to defend. Unless there are any other questions, I'll take my seat. Thank you very much. Thank you, Mr. Foster. Counsel? Why don't you talk to us about Westfield v. Long? Why doesn't that case determine the outcome of your case? Because it's totally the opposite. Westfield v. Long involved a claim under the Drug Dealer Liability Act. In that case, I think the mother of someone who was injured or passed away sued someone up the distribution chain, and the Drug Dealer Liability Act is a law enacted in Illinois to give those aggrieved by the drug trade causes of actions against people at different levels than the people they interacted with. So by definition, any claim that the plaintiff in that case had against the drug dealer defendant arose out of the use, distribution, possession of illegal drugs. That's not so clear here. We don't know what Haley's death arose from. The complaint isn't clear that it arose from the ingestion of drugs? I don't know that it's clear. That's certainly what they allege in a couple places in the complaint, but you can't look at those allegations in a vacuum. We don't even know how much she took. It doesn't matter if the complaint says that Haley's death arose out of a controlled substance. This is a prescription for Joshua. He takes this. It's not toxic to him, and alcohol is a non-controlled substance. Maybe that affected the toxicity somehow. Maybe some other factor, genetic predisposition or prior drug abuse, which is contained in the complaint, maybe that affected the toxicity. Maybe that's what caused this to spring up and originate. Is that what the complaint said? I thought the complaint said that she died of methadone overdose. It cites the medical examiner's report, and that's what it says. That's what it says. So how can you be saying maybe, maybe, maybe, maybe, but the complaint says that's what the complaint says. And that if methadone caused her death, then it's excluded. According to the autopsy, the test was undetermined, but they did mention the drugs that could have been involved. Correct. Right. And all I'm saying is that in this analysis, you have to read the complaint in the light most favorable to the insured, and there are other factors here that could end up being the causal link that caused this to spring up or originate. Whether you choose to use a USFG sole proximate cause test or not, I think that they're looking at the whole world of the complaint in the light most favorable to the insured. There are things out there, there are questions that need to be answered before you can just conclude that this exclusion applies by virtue of what it says in the medical examiner's report. So you're saying the complaint does not, it's not a basis for the complaint that she died on methadone caused her death? It's not, it's in the complaint? Sure. Okay. And, so you're saying that that wasn't the cause of her death, is that it? I'm saying that it might not be the cause of her death. You don't know what the complaint says it was? It also says that she was out drinking at a late night bar and couldn't walk when she left the bar. And so I think, you know, that those issues need to be determined before you can just look at that one allegation of the complaint and say that it's conclusive as to the cause of the issue. That's all I'm saying. Anything further? Well, I just want to get back to something that was said about the former Felt case. Whether they found it was ambiguous or not, they still used the same test, you know, arising out of Spring-Forth originate language that is in all the cases that Allied is citing to. And they still found that, you know, arising from his a cause of death, it means that there has to be a causal link, and we have all these concurrent causes. Alcohol, prior drug abuse, a failure to summon aid. You have to look at, you know, just the fact that there was drugs involved doesn't necessarily preclude coverage. You have to let that play out before you can say there's no longer a duty to defect. And just to address the Smiley case and the Northbrook case, this case is not clear-cut as all those cases that address a vehicular exclusion or a home business exclusion. It's very easy to say, well, she was running a daycare in her house or they were driving a bus. Here, you know, with all the issues of failure to summon aid, alcohol, and all these things, the application is not black or white. And to find the causal link, I think you have to go, you can't be prejudicial about it. And I realize there's a stigma about methadone because of what it's used to treat, but this exclusion goes far beyond methadone. It goes for lots of medications that many, many people have. And I think that the exclusion affects all of that. And the application of this exclusion is not free and clear from doubt. And that's what's required. And if it's not free and clear from doubt, then there must be a duty to defect. Thank you, counsel. I want to compliment the attorneys on their arguments and on their briefs. This matter, which is a very interesting question, will be taken under advisement. And this court stands in recess until 1.30.